# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **V.** ) | **CASE NO.: 2:24-CR-485-AMM-NAD** |
| ) | |
| **WISAM A. SHARIEFF** ) | |
| ) | |

## **DEFENDANT'S SENTENCING MEMORANDUM**

Comes now the Defendant, Wisam A. Sharieff, by and through undersigned counsel, and respectfully submits this Sentencing Memorandum to aid this Court in imposing a sentence in accordance with the principles set forth in 18 U.S.C. 3553(s) Mr. Sharieff offers this memorandum to assist the Court in fashioning a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. This memorandum is submitted in a spirit of accountability, honesty, and remorse, and is informed by the Presentence Investigation Report, Wisam Sharieff's Sentencing Narrative and Release Plan, and the numerous character letters submitted on his behalf.

For the following reasons, that sentence should be a custodial term within the sentencing guidelines as calculated by the Court, followed by a term of supervised release of ten (10) years with continued sex offender specific treatment and compliance with all applicable sex offender registration statutes in existence at the time of his release from BOP custody.

## I. WISAM AHMAD SHARIEFF (18 U.S.C. 3553(a)(1))

Wisam Sharieff stands before this Honorable Court prepared to accept the sentence that you believe most appropriately fulfills the requirements of 18 U.S.C. 3553(a). From the outset of these proceedings, Mr. Sharieff has accepted responsibility for his conduct. He entered a blind plea of guilty to the counts of conviction without the benefit of a plea agreement, acknowledging his culpability and sparing the government, the Court, and—most importantly—the victims from further litigation and proceedings. In his personal sentencing narrative, Mr. Sharieff unequivocally acknowledges the profound harm caused by his actions and expresses deep shame and remorse for his role in that harm.

Mr. Sharieff does not attempt to minimize the seriousness of his conduct. He recognizes that his actions contributed to the sexual exploitation of a child and that such harm is lasting and deeply traumatic. His expressions of remorse are not self-serving; rather, they reflect a painful awareness of the damage inflicted upon an innocent victim, the victim's family, his own family, and the broader community. (See Wisam Sharieff's Sentencing Narrative attached as Exhibit A).

Mr. Sharieff will be 44 years old when he stands before the Court on January 28, 2026, for the imposition of sentence. Mr. Sharieff married Gina Debarthe in 2023 and remains married to her at this time. Mr. Sharieff has two (2) children, one son (10 yo) and one daughter (8 yo) born to his marriage with Aliya Nehal Sharieff, prior to their divorce in 2023.

Mr. Sharieff was raised by his mother (Naseem Sharieff) and father (Mohammad Sharieff) who both immigrated to the United States from India and who emphasized education and professional achievement. His father was employed as a computer programmer, reflecting a strong technical and professional background, while his mother is a pediatrician who also served in hospital leadership and administrative roles during her career. The PSI reflects that his parents came from different cultural perspectives, with his father adhering to more traditional views regarding family structure and expectations, and his mother described as more progressive and professionally ambitious. Together, they provided Mr. Sharieff with a stable, education-focused upbringing shaped by immigrant values, professional discipline, and high expectations. Wisam Sharieff has two older sisters; Ayesha Sharieff (age 49), who lives with her mother, and Sofia Sharieff (age 47), who lives near her mother and sister in Irving, Texas.

From the letter of Gina DeBarthe, wife of Wisam Sharieff, discussed her role in this case and her honest conversations with him, stating

> "Wisam has been my husband for over three years, so I was shocked and disgusted when I saw the child abuse videos on his smartphone. As a mandated reporter, I knew I had a duty to contact the authorities regarding the criminal activity. I am the person who called the Alabama Department of Human Services to report the existence of the videos.
>
> My husband and I have ongoing, painful conversations about the harm done to the victim in this case. Wisam knows he was wrong to encourage the victim's mother to film these videos. He made no excuses for his terrible choices. He knows he crossed a red line and committed a serious crime. I am glad he accepted full responsibility for his actions and pleaded guilty in court. . . .

> It was devastating to see the harm my husband caused in this case. I am still reckoning with how the same person could be such a gifted spiritual teacher and make such destructive personal choices. Wisam is just beginning a long journey of atonement for his crimes. He has spoken at length about his remorse for how he hurt the victim in his case. He also asked me for my forgiveness for the pain he caused me. Your Honor, I have forgiven Wisam and intend to stay married to him."

Mr. Sharieff's history is marked by significant physical illness, childhood trauma, and exposure to inappropriate sexual conduct at a young age. As detailed in his sentencing narrative, he endured chronic medical conditions, repeated hospitalizations, and prolonged periods of physical disability. He was also the victim of sexual abuse and inappropriate sexual exposure during his formative years.

These experiences do not justify his criminal conduct. However, they are relevant to understanding the psychological and emotional context from which his uncharacteristic behavior arose. Importantly, despite these hardships, Mr. Sharieff led a life largely defined by service to others, education, family involvement, and community engagement prior to the instant offenses.

Abdul Hasib, Founder and Director of Islam in Prison, a national nonprofit organization dedicated to supporting incarcerated men and women through education, spiritual rehabilitation, and reentry assistance wrote that Mr. Sharieff:

> "has taken full responsibility for everything he has done — without justification or denial — and speaks often about the pain his choices have caused to others, to his family, and to the community that once looked up to him. … I have witnessed the language of repentance in him — not words of self-defense, but of brokenness and sincere accountability."

4

Mr. Sharieff's older sister provided counsel with a letter for the Court's consideration. In her letter to the Court, Ayesha Sharieff states the following;

> " . . . Learning of Wisam's case was unimaginable. All evidence I'd witnessed during his 43 years pointed to a man who deeply values people and who does all he can to protect them from the evils in the world. I certainly can't speak to the facts behind anything Wisam has done, but I've searched for a reasonable explanation. His actions are juxtaposed to a man who's spent his life committed to spiritual and religious teachings, growth and mentorship. Admittedly, I'm heartbroken by what has happened.
>
> In writing and offering this letter of support, I am by no means downplaying or understating the seriousness of what has happened. I haven't lost sight of what was done to a child and the justice necessary for her. Actions have consequences. I believe that spending a period of time in prison is deserved and warranted. I also believe that the most significant opportunity to atone is not found in a small concrete cell.
>
> Wisam has the tools and a strong support system to live in society without causing further harm. He has a large, very involved family and has been a wonderful father to his children. I know how much he can give others. Wisam knows that at the end of the day he's accountable for his own actions, and there is no excuse for what's happened. Regret and remorse are heavy but it's through meaningful action that he can begin making amends. He's begun making amends since his arrest.
>
> While many people in his shoes might make excuses or feel self-pity, Wisam's focus has been 100% devotion to making amends to this child and others hurt by his actions. Instead of spending his time in prison making excuses, he's shown his true character by helping and giving to others. Even inside, people look to him for guidance. There is no chaplain where he is now, so he's been providing sermons every Friday. He's been teaching and sharing his knowledge with others. He helps men find hope. He motivates and inspires them to continue improving themselves despite their past."

The Court has received numerous character letters from educators, religious leaders, family members, friends, and community members who have known Mr.

Sharieff for decades. These letters consistently describe a man who is compassionate, generous with his time, devoted to his family, and committed to helping others.

From the letter of Mohammed Umair, close personal friend of Wisam Sharieff, states:

> "I am aware that Wisam is pleading guilty to federal charges, and I understand the serious nature of his offense. Knowing Wisam the way I do, I was shocked, horrified, and deeply hurt when I learned about his incarceration. I acknowledge his criminal actions and do not excuse them in any way. My intention is simply to share my experience of the person I have known for so many years - a kind, caring, and sincere individual who has shown love and generosity to everyone he meets. My relationship with Wisam goes back to our youth, when we would spend time together on the streets of downtown New York, staying out late with friends and grabbing food from the gyro stand in the city. Over the years, I have seen him in many stages of life - from the time he went overseas to study the Qur'an in Pakistan, to when he moved to Las Vegas and took me horseback riding for the first time. Later, when he relocated to California and went through a difficult divorce, I visited him and we spent long drives together talking through the challenges and helping each other find peace. When Wisam faced setbacks and felt alone, I did my best to support him - helping him get back on his feet, setting up small recording sessions in a closet so he could keep working and stay motivated. Likewise, when I was in a difficult place in 2007, Wisam came to my aid and gave me money to help me grow in my career. Years later, I helped him set up his studio in Texas. We have shared a long and meaningful journey together - full of good times, hard times, and moments of personal growth."

As the Court has seen, several of the letters specifically address Mr. Sharieff's remorse since his arrest, noting that he has expressed shame, accountability, and a sincere desire to change. Notably, individuals experienced in working with incarcerated persons have observed in Mr. Sharieff a level of reflection and accountability that suggests genuine potential for rehabilitation. While the Court

must sentence based on the offenses of conviction, these letters provide meaningful insight into Mr. Sharieff's character and his capacity for reform.

From the letter of Nadiyah Sayeed, M.S.Ed., Ed.S., lifelong friend of Wisam Sharieff, states:

> "As a woman, a mother, and a deeply committed educator, I understand the gravity of the allegations against Wisam and leave the evaluation of evidence and judgment to those who are experienced and qualified in doing so. As a person of faith who believes in service to God, I strive to live my life deeply committed to truth, justice, and equity. The social implications of these allegations on Wisam, his family, his community, and anyone who may have been harmed by his actions are serious and far reaching. I know he has accepted responsibility for his actions but do not know the full details of his case and am grateful that ignorance of those details allows me to more freely share my honest assessment of his character."

Wisam Sharieff has never been in trouble with the law which makes his current circumstances all the more out of character.

It is with deep regret that Mr. Sharieff stands before this Court to await sentencing. He has forever altered the landscape of his life through poor decision-making and addictive personality traits. Worse though, as he acknowledges in his personal narrative, he has also destroyed the life of a young girl who will forever have to deal with the trauma caused by his conduct.

In the letter of Shabana Sharieff, first cousin of Wisam Sharieff, husband, father, and educator, states:

> "I am aware that Wisam is before you today for sentencing on a federal charge. It is deeply difficult for me to reconcile this situation with the man I have known since I was 10 years old. The Wisam I know greets others with warmth, humor, and humility. He is devoted to his family and takes his children to visit their aunt every weekend. He has

dedicated his adult life to teaching the Qur'an and the Arabic language, helping others understand faith, discipline, and moral purpose. He has faced his own physical struggles with Crohn's disease yet has always spoken of life's challenges as opportunities for reflection and personal growth.

I cannot speak to the legal aspects of his case, but I can speak to his character—to his empathy, integrity, and lifelong commitment to helping others learn and grow. I believe sincerely that Wisam has the capacity to reflect, to take responsibility, and to rebuild his life in a way that benefits his family and community. I hope the Court will take into account the person he has been for decades and the good he is capable of doing in the future."

## II. SENTENCING CONSIDERATIONS

Attached hereto are a series of letters that have been forwarded to undersigned counsel for submission to this Honorable Court in support of Wisam Ahmad Sharieff. We respectfully ask the Court to consider the opinions of those that know Wisam best and the circumstances under which this crime was committed. We also ask the Court to consider his need, and continued desire, to remain a contributing member of society without having to be incarcerated for an excessive period of time.

## III. 18 U.S.C. 3553(a) FACTORS

This Court has ample authority to decide, for a variety of reasons, that an advisory guidelines sentence is the most appropriate sentence under the factors specific to this case. The ultimate command of the statute is, after considering these factors, to impose a sentence that is "sufficient, but not greater than necessary", to comply with the purposes set forth in subsection 3553(a)(2). This is the so-called parsimony provision, which requires District Courts to ***impose the minimum punishment needed to satisfy the purposes of sentencing***; being just punishment, deterrence, protection of the public, and rehabilitation of the defendant. Likewise, under Kimbrough, this requires the District Court to consider Mr. Sharieff and his sentence based on those unique factors, which come into consideration in this particular case and involving this particular defendant.

We respectfully submit that the Court should consider those factors in the following way:

### A.     History and characteristics of the defendant

Under 18 USC 3553(a)(1), the Court will consider the history and characteristics of Wisam Sharieff. The relevant facts, in this regard, have been set forth in this memorandum, in the pre-sentence investigation report, and in the attached letters and other documents. Included in those letters is a "Sentencing Narrative" and "Release Plan" which Wisam has prepared for this Court's consideration. It is clear that Mr. Sharieff is not your typical offender and he does not fit neatly into the "heartland" of cases that the United States Sentencing

Commission used to determine the appropriate range of sentence for this type of offense.

### B.     Nature and Circumstances of the Offense (3553(a)(1))

The offenses of conviction are undeniably serious and warrant substantial punishment. Crimes involving the sexual exploitation of children strike at the core of societal values and demand accountability. Mr. Sharieff understands this reality and does not contest the gravity of the offenses. He entered a blind plea in this matter, understanding fully that his fate would be in the hands of this Court. He stands before you having accepted responsibility for his conduct and asking only that you consider the facts and circumstances presented in this memorandum in support of a sentencing within the advisory sentencing guidelines.

At the same time, the Court may consider that the conduct occurred over a limited period of time, involved no prior criminal history, and stands in stark contrast to Mr. Sharieff's otherwise law-abiding life of service and dedication to others. These circumstances do not excuse the offense conduct, but they provide context for assessing an appropriate sentence under § 3553(a).

### C.     Calculation of the Advisory Sentencing Guidelines Range

### 1.     The Sentencing Guidelines are Advisory

As to 3553(a)(4) and 3553(a)(5), the Court will consider the advisory guidelines calculations. As a result of the decision in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court modified the sentencing statute to make the sentencing guidelines truly advisory in nature and not binding on the sentencing court. Id. at

245. As a result, sentencing courts are required to consider the advisory guideline range as a single factor enumerated in 18 USC § 3553(a) and are no longer bound by the sentencing range indicated by the applicable guideline in the case.

While the advisory guidelines form the starting point in determining a sentence; federal courts are required by Congress to impose the minimum punishment needed to satisfy the purposes of sentencing as set forth in 18 U.S.C. §3553 (a). See, e.g., *Gall*, 552 U.S. at 49 (stating that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" but "the Guidelines are not the only consideration"); §3553(a); see also, *Kimbrough*, 552 U.S. at 101.

**2. The Sentencing Guidelines Are Not Supported by Empirical Evidence and are the Result of Unconstrained Congressional Interference in the Sentencing System**

Congress established the United States Sentencing Commission ("the Commission") to formulate more consistent national sentencing standards that could be applied by all federal sentencing courts. In the Commission's initial development of a sentencing system, it took "an empirical approach that used as a starting point data estimating pre-guidelines sentencing practice." United States Sentencing Commission, Guidelines Manual ("USSG"), Ch. 1, Pt. A, ¶1.3 (Nov. 2009). The Commission "analyzed data drawn from 10,000 presentence investigations, the differing elements of various crimes as distinguished in substantive criminal statues, the United States Parole Commission's guidelines and statistics, and data from other

relevant sources in order to determine which distinctions were important in pre-guidelines practice." Id.

The guidelines' strength, however, depends on whether the Commission acted in "the exercise of its characteristic institutional role." *Kimbrough*, 552 U.S. at 109. This role has two basic components: (1) reliance on empirical evidence of pre-guidelines sentencing practice and (2) review and revision in light of judicial decisions, sentencing data, and comments from participants and experts in the field. *Rita*, 551 U.S. 338, 350-51. In that institutional role, the Commission "has the capacity courts lack 'to base its determination on empirical data and national experience guided by a professional staff with appropriate expertise.'" *Kimbrough*, 552 U.S. at 108 (citation omitted); see also, *Gall*, 552 U.S. at 55-56 (stating that "even though the Guidelines are advisory rather than mandatory, they are…the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.")

However, "not all Guidelines are tied to empirical evidence." *Gall*, 552 U.S. at 46, n.2. When the Guidelines are not based upon an empirical approach and instead are guided by statutory directives, the sentencing court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentence range will 'reflect a rough approximation of sentences that might achieve §3553(a)'s objectives.'" See, e.g., *Kimbrough*, 552 U.S. at 108 (quoting *Rita*, 551 U.S. 338, 350-31).

      a.      **USSG Section 2G2.1 Are Not Based On Empirical Data**

In this case, the Guideline range is not the product of the Commission's institutional role. Instead, the Guidelines sentencing range for child exploitations offenses were promulgated, for the most part, in response to statutory directives. See U.S.S.G. App. C, Amends. 537 (Nov. 1, 1996), 592 (Nov. 1, 2000), 612 (May 1, 2001), 627 (Nov. 1, 2001), 661 (Oct. 27, 2003), & 664 (Nov. 1, 2004), 733, 736, 737 (Nov. 1, 2009), 801 (Nov. 1, 2016), 824 (Nov. 1, 2023), and 836 (Nov. 1, 2025). Against the Commission's recommendations, the Guidelines were often amended to add new offenses conduct, to add or amend specific offense characteristics, and base offense level increases without providing for necessary distinctions or a supported empirical basis.

In 1987, Section 2G21 provided for a base offense level of 25 and had a single 2 point increase for the specific offense characteristic involving a minor under the age of 12. In 1997, Section 2G2.1 provided for a base offense level of 25 and had 3 specific offense characteristics that increased from 2 to 4 levels if a child under 12 was involved and added a 2 level increase if the defendant was a parent, relative or legal guardian and 2 levels for the use of a computer. The Commission last significantly updated and amended the sentencing guidelines for child exploitation offenses in 2004, largely in response to the PROTECT Act which required an increased sentence of not more than 20 years for possession of child exploitation offense "involving a prepubescent minor or a minor who has not attained the age of 12"[1]. As a result of the congressionally mandated amendments, the 2004 amendments to Section 2G2.1

---

[1] https://www.gpo.gov/fdsys/pkg/PLAW-112publ206/html/PLAW-112publ206.htm

provided for a base offense level of 32 and included new specific offense characteristics for sexual contact (+2 or +4 levels), distribution (+2 levels), and sadistic or masochistic (+4 levels).

Not only were these Guideline amendments not based on empirical data, but "Congress acted . . . without giving either the Judicial Conference or the Sentencing Commission a fair opportunity to consider and comment on the direct amendment." The Commission's Report on the History at page 39 n.190 (because the amendments were "enacted by Congress and effective on April 20, 2003, making 'it impracticable to publish the conforming amendments in the Federal Register to provide an opportunity for public comment before the congressional amendments became effective'").

It should be noted the enhancement found in subsection 2G2.1(b)(1) if the offense involved a minor who had attained the age of 12 years but not attained the age of 16 years; 2G2.1(b)(2) if the offense involved the commission of a sexual act or sexual contact; 2G2.1(b)(4) if the offense involved the material that portrays sadistic or masochistic conduct; and 4B1.5(b) if the offense involved a defendant engaged in a pattern of activity involving prohibited sexual conduct are responsible for an increase in an offenders total offense level of twelve (12) levels.

**b.   The Child Pornography Guidelines Result in Unwarranted Sentencing Disparities**

One of the fundamental rules of the criminal justice system is that punishment should be proportionate with the criminal conduct or with its threat to society as a whole. The need to tailor sentences to the perceived dangers and the needs of the

individual being sentenced (and his family and community) are also integrally related. Proportionality in sentencing encourages a fair system. In the Commission's 2024 statistical publication, offenders received adjustments for specific offense characteristics in 99.2% of all cases sentenced pursuant to Section 2G2.1; with 40.1% receiving a 4 level enhancement for minor less than 12, 57.2% receiving a 2 level enhancement for commission of a sex act, 11.9% received a 4 level increase for sadistic or masochistic conduct, and 15.9% received 2 level increase for use of a computer to solicit participation in the offense.[2]

### 3. Other 18 U.S.C. 3553 Factors

**Section 3553(a)(3)** The Court can note that it has considered the kinds of sentences available as required by Section 3553(a)(3) and will choose the precise kind of sentence that the Court believes will serve 3553(a)'s purposes best for all the reasons discussed herein.

**Section 3553(a)(6)** As to 3553(a)(6), regarding the avoidance of unwarranted sentencing disparities, this issue has been addressed previously in this sentencing memorandum.

**Section 3553(a)(7)** As to 3553(a)(7), restitution has not been requested by the Government in this matter.

**Section 3553(a)(2)** This leaves us with 3553(a)(2), which sets forth the following purposes that the Court should seek to achieve through sentencing:

---

[2] https://www.ussc.gov/research/data-reports/guideline/2024-guideline-application-frequencies

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

The Court should bear in mind the statutory command that the Court should impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes listed in 3553(a)(2).

Subsection (a)(2)(A) speaks of the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. One cannot merely take this factor as requiring that the sentence be of some particular severity because the crime was a serious one. In the end, these factors taken together with the substance of this memorandum, should convince the Court that a guidelines sentence is warranted and is sufficient to meet the goals of 3553(a), but is not greater than necessary to achieve them.

Subsection (a)(2)(B) speaks of a sentence that is sufficient to adequately deter criminal conduct in the future. While it is important for Mr. Sharieff to recognize the trauma and harm he has caused to the young victim in this case, it is also important to consider the collateral consequences that will naturally come as a result of Wisam Sharieff's entry of a guilty plea. He will forever be a convicted sex offender and will be required to register. He will be required to provide notice of his conviction

wherever he resides and works and live with the increased monitoring involved in all such cases. He will also never again work in his chosen profession and will forever live with the knowledge of the harm he has caused the young victim in this case.

Mr. Sharieff hopes to once again seek professional counseling within the Bureau of Prisons to help him deal with the childhood sexual abuse he has failed to adequately address. He previously obtained treatment from Dr. Michael Barta and was diagnosed and treated for Trauma Induced Sexual Addiction at his facility in Colorado.

Subsection (a)(2)(C) speaks of a sentence sufficient to protect the public from further crimes of the defendant. The Court should find that there is no evidence and no reason to believe that there is any risk of further crimes by Mr. Sharieff. The requirement to register as a sex offender for the remainder of this natural life, the restrictions on his use of electronic and internet connected devices, and the requirement to report to a probation officer for the foreseeable future helps to ensure he will not pose a threat to the public.

The Court should find that he does not pose a threat to re-offend and that no additional increase in the length of sentence is necessary to promote this particular attribute of sentencing.

## VI. CONCLUSION

Undersigned counsel submits that an appropriate sentence, after sustaining his objections to the calculations of the guidelines, would be a within guidelines sentence in a Bureau of Prisons facility capable of offering continued mental health

and sex offender counseling and treatment. Following his release from custody, Mr. Sharieff should be placed on a period of supervised release of no more than ten (10) years with terms and conditions as determined by the Court. The resulting sentence would be appropriate under the circumstances of this case, would avoid an unnecessary sentencing disparity, and would substantially meet the needs of sentencing as pronounced in 18 U.S.C. 3553(a)

                                                                  RESPECTFULLY REQUESTED:

                                                    /s/  Michael P. Hanle
                                                    MICHAEL P. HANLE
                                                    Attorney for Defendant
                                                    2320 Arlington Avenue South
                                                    Birmingham, Alabama  35205
                                                    Telephone:   205/930-9717
                                                    E-mail:       mhanle@rjaffelaw.com

## CERTIFICATE OF SERVICE

     I hereby certify that on the 21st day of January 2026, I electronically filed this Sentencing Memorandum and served a copy of same on all parties by filing same with the CM/ECF electronic filing system.

                                                    /s/  Michael P. Hanle
                                                    MICHAEL P. HANLE